UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL MORRIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:11-CV-1760-NAB |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying Michael Morris's ("Morris") application for a period of disability and disability insurance benefits under Title II of the Social Security Act ("SSA" or the "Act"). Morris alleges disability due to borderline intellectual functioning IQ, coronary artery disease ("CAD"), gastro esophageal reflux disease ("GERD"), hypercholesterolemia; chronic obstructive pulmonary disease ("COPD"), benign hypertension, allergic rhinitis, chronic back pain, and hyperlipidemia. [Doc. 2, p.2] All parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 22] For the reasons set forth below, the Commissioner's decision is affirmed.

**I.  PROCEDURAL BACKGROUND**

On July 13, 2010, Morris filed an application for disability insurance benefits. (Tr. 135-150.) The Social Security Administration ("SSA") denied Morris's claim and he filed a timely request for a hearing before an administrative law judge ("ALJ"). (Tr. 89-93, 130-134.) The SSA granted Morris's request and the hearing took place on June 6, 2011. (Tr. 25-87, 106.) The ALJ issued a written decision on July 6, 2011, upholding the denial of benefits. (Tr. 7-19.)

Morris requested review of the ALJ's decision from the Appeals Council on July 19, 2011. (Tr. 130-135.) On September 13, 2011, the Appeals Council denied Morris's request for review. (Tr. 1-6.) The decision of the ALJ thus stands as the final decision of the Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000). Morris filed this appeal on October 11, 2011. [Doc. 2] The Commissioner filed an Answer on December 22, 2011. [Doc. 10] Morris filed a Brief supporting his Complaint. [Doc. 12] The Commissioner filed a Brief in Support of the Answer. [Doc. 16].

## II.    DECISION OF THE ALJ

The ALJ determined that Morris met the insured status requirements of the Social Security Act through September 30, 2013. (Tr. 13.) The ALJ found that Morris had not engaged in substantial gainful activity since the alleged onset date of disability. (Tr. 13.) Next, the ALJ determined that Morris suffered from the following combination of severe impairments: coronary artery disease, benign hypertension, hypercholesterolemia, tobacco abuse, COPD, GERD, and borderline intellectual functioning. (Tr. 13.) Then, the ALJ found that Morris's impairments neither met nor medically equaled a listed impairment. (Tr. 14.) The ALJ determined that Morris had the residual functional capacity ("RFC") to do sedentary work with the nonexertional limitation that he could "understand, remember, and carry out detailed (but not complex) instructions." (Tr. 15.) The ALJ also determined that Morris could no longer perform his past relevant work, but Morris could make an adjustment to other work as an order clerk based on his RFC, age, education, and work experience. (Tr. 18-19.) Finally, the ALJ concluded that Morris was not and had not been disabled since his alleged onset date of disability on May 26, 2010. (Tr. 19.) The Court has reviewed the parties' briefs, the decision of the ALJ, the transcript of the hearing, and the additional medical and documentary evidence in the record.

The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

### III. STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. § 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. § 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities … ." *Id.* "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007). Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. § 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent claimant from doing past relevant work.[1] 20 C.F.R. § 404.1520(e). At this step, the burden rests with the claimant to establish his or her RFC. *Steed*

---

[1] "Past relevant work is work that [the claimant] has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn how to do it." *Mueller v. Astrue*, 561 F.3d 837, 841 (8th Cir. 2009) (citing 20 C.F.R. § 404.1560(b)(1)).

3

*v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008). RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f). If it is found that the claimant can still perform past relevant work, the claimant will not be found to be disabled. *Id.*; 20 C.F.R. § 404.1520(f). If the claimant cannot perform past relevant work, the analysis proceeds to Step V.

At the fifth and last step, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work. 20 C.F.R. § 404.1520(g)(1). If it is found that the claimant cannot make an adjustment to other work, the claimant will be found to be disabled. *Id.* At this step, the Commissioner bears the burden to "prove, first that the claimant retains the RFC to perform other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to perform." *Goff*, 421 F.3d at 790. The Commissioner must prove this by substantial evidence. *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983). If the claimant satisfies all of the criteria of the five-step sequential evaluation process, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Id.*

This Court reviews the decision of the ALJ to determine whether the decision is supported by "substantial evidence" in the record as a whole. *See Smith v. Shalala*, 31 F.3d 715, 717 (8th Cir. 1994). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). Therefore, even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the ALJ's decision must be affirmed

if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). In *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

*Id.* As such, "[the reviewing court] may not reverse merely because substantial evidence exists for the opposite decision." *Lacroix v. Barnhart*, 465 F.3d 881, 885 (8th Cir. 2006).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Guillams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). The factual findings of the ALJ are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). The district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). Additionally, an ALJ's decision must comply "with the relevant legal requirements." *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008).

## IV. DISCUSSION

Morris asserts three arguments on appeal. First, Morris argues that the ALJ failed to properly determine whether his impairments met or medically equaled Listing 12.05(C) for mental retardation. Second, Morris argues that the ALJ failed to properly assess his credibility. Third, Morris argues that the ALJ failed to properly assess his RFC.

### A. Listing 12.05(C)

Morris asserts that the ALJ erred in determining that he does not meet the listing requirement in 12.05(C) for mental retardation. Morris contends that a formal diagnosis of

mental retardation is not required by Listing 12.05 and that the ALJ did not use the appropriate definition for "deficits in adapative functioning."

"The claimant has the burden of proving that his impairment meets or equals a listing." *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010). "To meet a listing, an impairment must meet all of the listing's specified criteria." *Id.* (citing *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004)). The Eighth Circuit has stated that although a formal diagnosis of mental retardation is not required under Listing 12.05, the requirements of the introductory paragraph are mandatory. *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006). Listing 12.05's introductory paragraph defines mental retardation as "significantly, subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, *i.e.*, the evidence demonstrates or supports onset of impairment before age 22. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, 12.05. If an impairment satisfies the diagnostic description in the introductory paragraph and the criteria in paragraphs A, B, C, or D, then the Commissioner will find that the claimant's impairment meets the listing criteria. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, 12.00. "Thus, in order to qualify under Listing 12.05(C), [Morris] was required to show (1) significantly subaverage general intellectual functioning with deficits in adaptive functioning, (2) an onset of that impairment prior to age twenty-two, (3) a valid IQ score between 60 and 70, and (4) an additional impairment imposing a significant work-related limitation of function." *Best v. Astrue*, No. 2:12-CV-7 LMB, 2013 WL 1163464 at *12 (E.D. Mo. March 20, 2013).

Adaptive functioning is not defined in Listing 12.05. The +Court, however, has used the definition of adaptive functioning contained in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR). *See Quarles v. Colvin*,

No. 4:11-CV-1854 TCM, 2013 WL 1197115 at *18 (E.D. Mo. March 25, 2013); *Weatherspoon v. Massanari*, 228 F.Supp.2d 1041, 1047 (E.D. Mo. 2002). According to the DSM-IV-TR,

> Adaptive functioning refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting. Adaptive functioning may be influenced by various factors, including education, motivation, personality characteristics, social and vocational opportunities, and the mental disorders and general medical conditions that may coexist with Mental Retardation. Problems in adaptation are more likely to improve with remedial efforts than is the cognitive IQ, which tends to remain a more stable attribute.

Diagnostic and Statistical Manual of Mental Disorders, 40 (4th ed. Text Rev. 2000) ("DSM-IV-TR"). The ability to perform gainful activity is not relevant, if the claimant otherwise meets the requirements of Listing 12.05. *Cheatum v. Astrue*, 388 Fed. App'x 574, 577 n.3 (8th Cir. 2010). "It is relevant, however, to whether [he] has shown the deficits in adaptive functioning necessary to meet that listing." *Id.*

In this case, the ALJ determined that Morris did not carry his burden of proving the existence of mental retardation, because he failed to prove that he sufficiently suffers from deficits in adaptive function, therefore not satisfying the diagnostic description of mental retardation. (Tr. 15.) The Court finds that the ALJ's decision is supported by substantial evidence on the record as a whole. During the past 15 years, Morris was employed in skilled work as a mechanic and semi-skilled work as a dump truck driver. (Tr. 70-71.) Morris testified that he was self-employed as an independent contractor between 2007 and 2009. (Tr. 40.) Morris had a driver's license and drove approximately 100 miles per week. (Tr. 83.) Morris stated in his Adult Function Report that he can pay bills, handle a savings account, count change, and use a checkbook (Tr. 180.) Morris also did laundry, mowed the lawn, and was able to take

care of his personal needs without any assistance. (Tr. 178-181.) In 1977, Morris was given a Wechsler Intelligence Scale test and his full scale IQ was assessed at 70, which is borderline intellectual functioning. (Tr. 22, 226.) Morris testified that he attended special education classes in all of his subjects, attended speech therapy, and stopped attending school in the tenth grade. (Tr. 76.) Morris stated that he had difficulty with reading, writing, and spelling and that he received assistance from his wife in completing his Social Security paperwork. (Tr. 76-77.) He also stated that he had to obtain help completing paperwork in past jobs as a dump truck driver and mechanic, because people could not read his writing or he needed help with spelling. (Tr. 76-77.)

The ability to perform skilled and semi-skilled work for many years and operating as an independent contractor are inconsistent with mental retardation. *Cheatum*, 388 Fed. App'x at 577-78 (claimant's employment in semi-skilled and skilled positions for many years does not support diagnosis of mental retardation). In addition, evidence in the record showed that Morris could independently manage his finances, do laundry, mow his lawn, drive up to 100 miles per week, do brush hogging, and he had no problems with his personal care. These activities are also inconsistent with someone with mental retardation. *See Best v. Astrue*, 2013 WL 1163464 at \*13 (claimant's activities of managing a business, driving, caring for himself, performing chores, and counting change inconsistent with mental retardation). Further, the Court agrees with the ALJ that Dr. Grace Beaumont's opinion regarding Morris's mental limitations was not entitled to controlling weight. (Tr. 18.) Dr. Beaumont was Morris's primary care physician. She opined that Morris was markedly limited in performing activities within a schedule (including maintaining regular attendance and being punctual within customary limit and ability to complete a normal workday and workweek without interruption from psychologically based

symptoms and to perform at a consistent pace (Tr. 362-63.) She also opined that he was markedly limited in the ability to respond appropriately to changes in the work setting and to travel in unfamiliar places or use public transportation. (Tr. 363.) Dr. Beaumont indicated that her opinion was based on her interview of Morris. (Tr. 363.) Dr. Beaumont did not examine Morris in preparation of her written opinion. Moreover, Dr. Beaumont is not a psychiatrist. "Greater weight is generally given to the opinion of a specialist about medical issues in the area of specialty than to the opinion of a non-specialist." *Brown v. Astrue*, 611 F.3d 941, 953 (8th Cir. 2010). Therefore, the Court finds that the ALJ's determination that Morris does not meet Listing 12.05 is supported by substantial evidence in the record as a whole.

### B. ALJ's Credibility Assessment

Next, Morris contends that the ALJ did not conduct a proper credibility analysis, because the ALJ disputed Morris's description of his medical ailments, improperly used personal observations to discount credibility, improperly considered past relevant work, and did not address factors that bolstered Morris's credibility.

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ must fully consider all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

>   (1) the claimant's daily activities;
>
>   (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

9

> (3) any precipitating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant's functional restrictions

*Id.* The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the claimant's complaints. *Guilliams*, 393 F.3d at 802; *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004). Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988).

As required under *Polaski*, the ALJ noted several inconsistencies in Morris's complaints and testimony and the medical record. Morris asserts that the ALJ should not discount his credibility based on his testimony that he had a heart attack and that his ejection fraction[2] was 35-40%. The Court finds that the ALJ properly noted these inconsistencies. Morris admits that he was not "technically diagnosed with having a heart attack." (Pl.'s Br. at 13.) Morris states that his symptoms, however, support his diagnosis of heart disease. Morris testified that he was disabled, because his heart was getting weaker, "down to, like, 35 percent." (Tr. 28.) The Court notes that Morris also testified that his medication had increased his ejection fraction to 38 to 40%" (Tr. 28.) The ALJ quoted Dr. Brian A. Seeck, a cardiologist, who stated that Morris's "ejection fraction is 35% or less" and "unlikely that EF is any worse than it has been for years." (Tr. 277.) The Court notes that while these may be minor inconsistences standing alone, the ALJ

---

[2] Ejection infraction is the fraction of blood contained in the heart ventricle after it contracts. *See* Stedman's Medical Dictionary 710-711 (27th ed.) A normal ejection fraction is 0.55 or greater, with the onset of congestive heart failure the ejection fraction decreases to 0.10 or even less in severe cases. *Id.* at 711.

could properly consider them with the other inconsistencies in the record, which were not contested by Morris. (Tr. 16-17.)

Next, in assessing Morris's claim of a disabling mental disability, the ALJ highlighted that Morris was "fully engaged in the process; he understood the nature of the proceedings; he paid attention throughout; he maintained eye contact; [and] his comments and answers to questions were relevant and added value. (Tr. 17.) Morris believes that the comments about his behavior at the hearing were improper in the credibility analysis. An ALJ may not discount a claimant's credibility solely on basis of personal observations. *Bishop v. Sullivan*, 900 F.2d 1259, 1263 (8th Cir. 1990.) However, "[t]he ALJ's personal observation of the claimant's demeanor during the hearing is completely proper in making credibility determinations." *Johnson v. Apfel*, 240 F.3d 1145, 1147-48 (8th Cir. 2001). In this case, it is clear that that the ALJ's decision regarding Morris's credibility was based on several factors and not solely on his personal observations.

Then, Morris states that the ALJ's statement that Morris did not allege he was mentally unfit to do his past work was inaccurate, because Morris testified he needed help completing paperwork. (Tr. 17.) The Court does not believe that the ALJ's statement was inaccurate, because Morris successfully performed his past work for several years and did not testify that completing paperwork prevented him from working. Rather, Morris testified that he stopped working at his last job as a dump truck driver, because it required too much physical exertion and made his hands numb. (Tr. 36-37.) Morris only testified that others could not read his handwriting on paperwork and he needed help with spelling. (Tr. 76-77.) Therefore, the Court finds no error in the ALJ's factual determination.

Finally, Morris asserts that the ALJ erred by failing to discuss evidence that would support his credibility. Specifically, Morris asserts that ALJ did not discuss that Morris had a long work record and substantial earnings for many years. "[A] claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Nunn v. Heckler*, 732 F2d 645, 648 (8th Cir. 1984.) In this case, the ALJ did consider Morris's work history. The ALJ's decision states, "claimant's work history does not support his allegation that he suffers from a debilitating learning disability. The vocational expert testified that Claimant's work history includes semi-skilled and skilled work. Claimant has not alleged that he was mentally unable to do that work." (Tr. 17.) It might have been better if the ALJ had also referred specifically to Morris's work record and earnings as a factor favoring Morris's credibility, but the ALJ is not required to refer to every part of the record. *Roberson v. Astrue*, 481 F.3d 1020, 1025-1026 (8th Cir. 2007). "[T]he portions of the record that he referred to were sufficient to support his credibility determination. *Id.* at 1026. Based on the foregoing, the Court finds that the ALJ's credibility determination is supported by substantial evidence in the record as a whole.

### C. RFC Determination

Morris asserts that the ALJ committed reversible error by not incorporating limitations caused by Morris's COPD and borderline intellectual functioning into the RFC determination. Morris also argues that the ALJ failed to give proper weight to any of the medical opinions contained in the record when assessing Morris's RFC.

RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545. The RFC is a function-by-function assessment of an individual's ability to do work related activities on a

12

regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of his limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. *See Lauer*, 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). The burden is on the claimant to establish his RFC. *Steed v. Astrue*, 524 F.3d at 874 n.3.

In this case, the ALJ found that Morris had the residual functional capacity to do sedentary work, except his ability is limited to understanding, remembering and carrying out detailed, but not complex instructions. (Tr. 15.) The ALJ stated that his RFC finding is based on the totality of the medical evidence viewed in the light most favorable to Morris. (Tr. 16.) The ALJ noted that his finding that Morris could understand, remember, and carry out detailed instructions was based upon Morris's testimony that his recent work history includes semi-skilled work and he stopped working because of physical, not mental, limitations. (Tr. 16.) Morris contends that the ALJ should have included limitations tied to Morris's ability to read, write, do math, and an inability to work around dust, fumes, and gases.

The Court finds that that ALJ was not required to include any additional limitations based on Morris's reading, writing, math ability, or environment. First, the ALJ's decision limits

Morris to sedentary work, which is a substantial limitation considering his previous work. Second, Morris "fails to recognize that the ALJ's determination of [his] RFC was influenced by [the ALJ's] determination that his allegations [of a disabling mental condition] were not credible." *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010). Morris testified that he needed help with writing and spelling and had an IQ of 70, but there is no evidence in the record that any limitations in his writing, spelling, or reading prevented him from successfully performing his past jobs or would currently prevent him from performing work. Moreover, an IQ score is not a dispositive determination of an individual's abilities. *See Clark v. Apfel*, 141 F.3d 1253, 1256 (8th Cir. 1998) (ALJ can discount I.Q. score based on its inconsistency with claimant's daily functional activities and abilities, and prior medical record). Morris's I.Q. score is inconsistent with his daily functional abilities and he is not restricted in his daily activities because of any mental impairment. *Id.* As noted previously, Morris can perform a plethora of activities mostly uninhibited by any mental limitations. (Tr. 40, 70-71, 83, 178-181.) Further, the Court finds that the ALJ's exclusion of the limitation regarding exposure to dust, fumes, and gases is insignificant. The job of order clerk, identified by the vocational expert as a job Morris could perform, does not require exposure to air-borne irritants or chemicals[3], so the omission of that limitation is inconsequential. *See* DICOT 249.362-026.

  Finally, Morris contends that the ALJ's decision fails to give proper weight to any of the medical opinions in the record, specifically the opinions of Dr. Beaumont and certified Physician's Assistant Sandra Dempsey. In making a disability determination, the ALJ shall "always consider the medical opinions in the case record together with the rest of the relevant

---

[3] Appendix D to the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* states that exposure to toxic caustic chemicals means "exposure to possible bodily injury from toxic or caustic chemicals." SCODICOT APP D (Westlaw). Exposure to atmospheric conditions is "exposure to such conditions as fumes, noxious odors, dusts, mists, gases, and poor ventilation that affect the respiratory system, eyes, or the skin." *Id.* Other environmental conditions include conditions not elsewhere defined. *Id.*

evidence in the record." 20 C.F.R. § 404.1527(b); *see also Heino v. Astrue*, 578 F.3d 873, 879 (8th Cir. 2009). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [his or her] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).

Generally, a treating physician's opinion is given controlling weight, but is not inherently entitled to it. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as a whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). A treating physician's opinion will be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(d)(2); SSR 96-2p; *see also Hacker*, 459 F.3d at 937.

Dr. Beaumont and Sandra Dempsey completed medical source statements regarding Morris's physical and mental abilities in October 2010 and May 2011. (Tr. 325-326, 362-363, 365-366.) Dr. Beaumont and Ms. Dempsey noted several significant physical and mental limitations for Morris. As noted above, the ALJ did not give controlling weight to Dr. Beaumont's opinions and gave no weight to Sandra Dempsey's opinion (Tr. 17-18.)

The ALJ declined to give Dr. Beaumont's physical and mental source statement opinions controlling weight, because (1) the opinions were based on her interview with Morris and his description of his symptoms, not an examination, (2) she had not examined Morris in almost a year when the opinions were issued; (3) she provided no supporting medical evidence, and (4) she did not explain her opinions. (Tr. 18.) The Court finds that the ALJ properly discounted

15

Dr. Beaumont's opinions. More weight is given to medical sources who present relevant evidence to support an opinion. 20 C.F.R. § 404.1527(c)(3). Generally, more weight is given to the opinion of a specialist about medical issues related to his or her area of specialty. 20 C.F.R. § 404.1527(c)(5). More weight will also be given to opinions that are consistent with the record as a whole. 20 C.F.R. § 404.1527(c)(4). Dr. Beaumont is not a psychiatrist. Further, there is no other evidence in the record, including Dr. Beaumont's treatment notes, to support the substantial physical and mental limitations she indicated in her opinions. Therefore, her opinions were not entitled to controlling weight.

The Court also finds that Ms. Dempsey's physical medical source opinion was properly discounted. The ALJ discounted Ms. Dempsey's opinion, because there was no evidence in the record that she had ever treated or examined Morris prior to completing the medical source statement. (Tr. 18.) Also, Ms. Dempsey did not provide any evidence to support her opinion. (Tr. 18.) As a physician's assistant, Ms. Dempsey is a medical source, but not an acceptable medical source. "Information from [medical] sources cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose." SSR 06-03P, 2006 WL 2329939. "[I]nformation from such other sources, [however], may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function. *Id.*; 20 C.F.R. § 404.1513(d). Because there is no evidence that Ms. Dempsey treated or examined Morris and there is no evidence to support the limitations included in the medical source statement, the ALJ properly gave no weight to her opinion.

## V. CONCLUSION

For the reasons set forth above, the Court finds that the Commissioner's decision should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the relief which Morris seeks in his Complaint and Brief in Support of Plaintiff's Complaint is **DENIED**. (Docs. 2, 12)

A separate Judgment will accompany this Memorandum and Order.

Dated this 4th day of April, 2013.

                                                /s/ Nannette A. Baker
                                                NANNETTE A. BAKER
                                                UNITED STATES MAGISTRATE JUDGE